## CIRCUIT COURT OF LOUDOUN COUNTY

In re Zoning Ordinance Amendments
enacted by the Loudoun County
Board of Supervisors
on January 6, 2003

Case No. (Chancery) 03ZOA000-00 (Consolidated Case)

BY JUDGE THOMAS D. HORNE

October 21, 2003

*Memorandum Opinion and Consolidated Decree No. 25*

This case is before the Court on the motion of the Litigation Steering Committee to strike the Respondents' Responses to Vested Rights Statements and "Rules Matrix." Va. Code Ann. § 8.01-274 (Michie 2003). The motion requires that the Court interpret the provisions of Va. Code Ann. § 15.2-2307 (Michie 2003). That statute provides that a local governing authority's power to zone may not infringe upon vested rights. It states in pertinent part:

Nothing in this article [Va. Code Ann. tit. 15.2, ch. 22, art. 7] shall be construed to authorize the impairment of any vested right. Without limiting the time when rights might otherwise vest, a landowner's rights shall be deemed vested in a land use and such vesting shall not be affected by a subsequent amendment to a zoning ordinance when the landowner (i) obtains or is the beneficiary of a *significant affirmative governmental* act which remains in effect allowing *development of a specific project*, (ii) *relies in good faith* on the significant affirmative governmental act, and (iii) i*ncurs extensive obligations or substantial expenses* in *diligent pursuit* of the *specific project* in *reliance* on the significant affirmative governmental act.

For purposes of this section and without limitation, the following are deemed to be significant affirmative governmental acts allowing development of a specific project: (i) the governing body has *accepted proffers or proffered conditions* which specify use related to a zoning amendment; (ii) the governing body has *approved* an application for a *rezoning* for a *specific use or density*; (iii) the governing body or board of zoning appeals has granted a *special exception or use permit with conditions*; (iv) the board of zoning appeals has *approved a variance*; (v) the governing body or its designated agent has *approved a preliminary subdivision plat, site plan, or plan of development* for the landowner's property and the applicant *diligently pursues approval of the final plat or plan* within a reasonable period of time under the circumstances; or (vi) the governing body or its designated agent has *approved a final subdivision plat, site plan, or plan of development* for the landowner's property.

Va. Code Ann. § 15.2-2307 (emphasis added).

The concept of vested rights is rooted in the due process clause of the Virginia Constitution. *School Board of the City of Norfolk v. United States Gypsum*, 234 Va. 32 (1987). Prior to the enactment of the provisions of Va. Code Ann. § 15.2-2307 during the 1998 session of the Virginia General Assembly as Senate Bill 570, vested rights had been recognized as part of the common law of the Commonwealth in zoning cases. See generally, E. A. Prichard and Gregory A. Riegle, *Searching for Certainty: Virginia's Evolutionary Approach to Vested Rights*, 7 Geo. Mason L. Rev. 983 (1999).

The common law relationship between vested property rights and zoning has been described as follows:

Privately held land is subject to applicable local zoning ordinances whether enacted before or after the property was acquired. Generally, landowners have no property right in anticipated uses of their land since they have no vested property right in the continuation of the land's existing zoning status. *Snow v. Amherst County Bd. of Zoning Appeals*, 248 Va. 404, 408, 448 S.E.2d 606, 608-09 (1994); *Town of Vienna Council v. Kohler*, 218 Va. 966, 976, 244 S.E.2d 542, 548 (1978). However, in limited circumstances, private landowners may acquire a vested right in planned uses of their land that may not be prohibited or reduced by subsequent zoning legislation. *See, Holland v. Board of Supervisors*, 247 Va. 286, 290-91, 441 S.E.2d 20, 22-23 (1994).

The limited circumstances are outlined in a "bright line test" that enables such landowners to determine the point at which they have acquired a vested right. *Town of Rocky Mount v. Southside Investors, Inc.*, 254 Va. 130, 132, 487 S.E.2d 855, 856 (1997); *Holland*, 247 Va. at 292, 441 S.E.2d at 23. The test is as follows:

"[A] landowner who seeks to establish a vested property right in a land use classification must identify a *significant official governmental act* that is manifested by the issuance of a *permit or other approval* authorizing the landowner to conduct a use on his property that otherwise would not have been allowed. Additionally, and equally important, our test requires that the landowner establish that he has diligently pursued the use authorized by the government permit or approval and incurred substantial expenses in good faith prior to the change in zoning." *Snow*, 248 Va. at 407, 448 S.E.2d at 608 (emphasis added). . . .

The term "other approval" is used in the context of the identification of a "significant official governmental that is manifested by the issuance of a permit or other approval." "Significant official governmental act," "issuance," and "permit," coupled with the word "or" imply that such approval is of similar character and formality as a "permit." . . .

[T]he scope of an "approval" is limited to an official response to a detailed request for a use of a particular property that would not otherwise be allowed under the law. Neither the granting of a variance nor the previous rezoning of a particular property is a sufficient manifestation of "approval" under the bright line test.

*Board of Zoning Appeals v. CaseLin Systems, Inc.*, 256 Va. 206, 210-12 (1998).

The General Assembly has both expanded and clarified those instances when a landowner may obtain a vested right to develop a specific project not permitted by subsequent zoning legislation. At the same time, the elements of reliance and expense have been retained.

The instant motion seeks to clarify the time of vesting and the rights to which a landowner is vested. Respondents would have the Court determine that those afforded vested rights may be required "to the extent possible" to comply with ordinance provisions enacted subsequent to vesting in a specific project. The position of the respondents is represented by the "Vested Rights Rules Matrix" filed in response to the vested rights claims raised by the individual complainants. In the preface to the matrix, it is provided:

[w]ith regard to vested rights, the general rule applicable to this matrix, and to any interpretational disagreement or dispute, is that new laws are applicable unless a project's features are vested, in which case the project's features may proceed as long as due diligence continues, but the new laws must be implemented to the extent possible where vested rights do not specifically preempt such new laws.

For example, it is the contention of the respondents that zoning overlays provided for by the January 2003 amendments to the Loudoun County zoning ordinance may affect vested rights of a complainant in a specific project depending on the nature of the significant affirmative governmental act giving rise to vesting (i.e. a proffered rezoning, preliminary plat approval, construction plan approval, final plat approval).

Rather than application of a "bright line" test to vesting, the respondent's position appears to be an attempt to harmonize vested property interests with legislative change. Such an attempt lends uncertainty to the land development process while unduly restricting the nature of the definition of project. Both

positions are contrary to legislative intent and recent Supreme Court precedent.

It is the contention of the landowners that the landowners have a vested interest in having the development of their specific project go forward in accordance with the zoning ordinance provisions in effect at the time of vesting. They suggest this position finds support in judicial precedent. The Supreme Court, prior to the enactment of Va. Code Ann. § 15.2-2307, found that a property owner who had established a vested right to approval of a site plan and issuance of a building permit need only comply with the code provisions in effect "prior to the amendment of the zoning ordinance." *Board of Supervisors of Fairfax County v. Cities Service Oil Co.*, 213 Va. 359, 362 (1972).

Vested rights are not only a product of due process but also important in providing certainty to development based expectancies. Rather than continue a "bright line" test, the "Rules Matrix" proposed by the respondents interjects discretion and uncertainty in land use regulation. The parties have included extensive commentary on the implications of the recent case of *City of Suffolk v. Board of Zoning Appeals*, 266 Va. 137 (2003). In *City of Suffolk*, the Supreme Court opined in a four to three decision that the trial judge did not err in according vested rights status to a rezoning under Va. Code Ann. § 15.2-2307. The decision clearly evidences an intent to distinguish vested rights claims decided under the provisions of Va. Code Ann. § 15.2-2307 from those decided under prior case precedent in determining whether the landowner had acted in "diligent pursuit" of a "specific project." The Court sees no reason why the more expansive definition of "specific project," adopted by the Supreme Court, should not similarly be applied to provide protection to the substantive rights of the landowner in existing zoning regulations, peculiar to the specific project that meets the tripartite test of the statute.

Accordingly, the Court finds that the Complainants, should they establish their claim to a vested right in a specific project, are entitled to develop that approved project in accordance with the governmental approval, and the ordinances and regulations in effect at the time of the approval, without regard to the application of the "Vested Rights Rules Matrix" or subsequent zoning ordinance amendments. Simply stated, the 2003 Zoning Ordinance Amendments cannot be legally applied to affect rights vested prior to January 7, 2003. Consistent with the finding of the Court, the motion to strike the vested rights responses and rules matrix is granted to the extent such response is inconsistent with the instant opinion.

March 30, 2004

The pretrial pleadings presently before the Court emphasize, among other things, the importance of notice when a local governing body exercises its power to legislate. Complainants ask the Court to exercise its right of judicial review and declare invalid the action of the Board of Supervisors (Board) in adopting sweeping changes to the County Zoning Ordinance because it failed to give statutorily required notice. The Commonwealth adheres to the "Dillon Rule," where local governing bodies may exercise only those powers specifically granted by the Legislature, those fairly or necessarily implied from those expressly granted, and those powers that are essential and indispensable. *Arlington County v. White*, 259 Va. 708 (2000). Thus, a failure of a local governing body to give notice as required by the General Assembly will render the legislative actions of a local governing body, such as the Board of Supervisors, void and of no legal efficacy.

Judicial review is not a new concept but traces its origins to the very early days of the Republic. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803); *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheaton) 304 (1816). Modern zoning practices in the Commonwealth have been the subject of judicial scrutiny since the early days of the twentieth century. *See, e.g., Gorieb v. Fox*, 145 Va. 554 (1926), *aff'd*, 274 U.S. 603 (1927); *West Brothers Brick Co. v. City of Alexandria*, 169 Va. 271 (1937). While courts are cautioned to tread lightly when faced with the exercise of police powers by a legislative body, they are required to nullify enactments made without authority or that are unreasonable or arbitrary.

When the Board advertised and considered the instant amendments, the case of *Glazebrook v. Board of Supervisors of Spotsylvania County*, 266 Va. 550 (2003), had not been decided by the Supreme Court of Virginia. Only after the consolidation of the proceedings and the filing of a Master Supplemental Bill of Complaint (MSOBC) by the Litigation Steering Committee (LSC) did that decision become the centerpiece certain of the procedural arguments in this case.

Over the objection of the Board, the Complainants were permitted to file a First Amended Master Supplemental Bill of Complaint. The Court found that such an amendment was consistent with the provisions of the Multiple Claims Act, and the rule that amendments to pleadings should be liberally granted. Va. Code Ann. § 8.01-267.1; Va. Sup. Ct. R. 1:8. That amended pleading forms the basis of the instant pretrial dispositive motions.

In this consolidated proceeding, the Complainants mount a challenge to Zoning Ordinance Amendments (ZOA) enacted by the Board on January 6,

2003. By decree of this Court entered on June 6, 2003, the Court ordered the limited consolidation of a number of individual challenges to these zoning amendments. As a result of this consolidation, the LSC was established by that Decree of Consolidation and has filed a First Amended Master Supplemental Bill of Complaint for Declaratory Judgment, Injunctive and Other Relief Regarding Specified Common Issues. In response, the Board has filed both demurrers and pleas in bar that the LSC asks be stricken. In addition, the Board has filed demurrers and pleas in bar to claims raised in what it contends are more than six individual cases subject to consolidation.

On Friday, February 20, 2004, counsel for the parties appeared before the Court for the purpose of presenting oral argument on these potentially dispositive pretrial issues. Prior to their appearance, they had submitted lengthy memoranda in support of their respective positions. The Court has considered the pleadings, papers filed, and arguments made. After an exhaustive review of the ordinance and applicable law, the Court makes the following findings as to these issues.

### Stipulation of the Parties

The parties have entered into the following Stipulation:

A. None of the Parties will present testimony at the February 20, 2004, hearing. Instead, the record will consist of the pleadings and certain documentary evidence, to the extent permitted by the Court, and other basic facts (e.g. zoning and overlay status of various Complainants' property) that are the subject of the following stipulations and statements.

B. For the purpose of the hearing on February 20, 2004, the Parties stipulate as to the authenticity of the exhibits attached to their respective briefs on the matters before the Court that day, but not as to (1) any hand-written marginalia thereon or (2) parts of the documents that may not have been attached.

C. Stipulations by a party as to the authenticity of a document does not mean that such party stipulates as to its admissibility, except that the Parties do stipulate as to the authenticity and admissibility of the Board's newspaper advertisements for the public hearings on the ZOAs [Zoning Ordinance Amendments] and the LSC [Litigation Steering Committee] agrees that the Court may consider these documents (as if they were attached as exhibits to the Amended MSBOC) when ruling on the Board's demurrers and pleas in bar.

D. The Parties will stipulate as to whether named Complainants are zoned to districts or overlays for the purpose of the AR-1/AR-2 [Agricultural Rural Zoning Districts] and overlay standing challenges.

E. The Parties agree (and will stipulate, if need be) that the Court can by judicial notice consider provisions of the prior Zoning Ordinance as well as the provisions of the Zoning Ordinance after the adoption of the ZOAs.

F. The Parties agree that the Demurrer and Plea in Bar to the 42 U.S.C. § 1983 Claims rise or fall on the outcome of the Demurrer and Plea in Bar to the Equal Protection Claims.

G. The LSC states that any references to the JLMA-1 [Joint Land Management Area Zoning District] district in the AMSBOC [Amended Master Supplemental Bill of Complaint] are typographical errors and are withdrawn as no Complainants are challenging the JLMA districts.

H. The LSC states that no Complainants are raising claims alleging violations of Substantive Due Process rights, and, to the extent that any such claims are stated in the pleadings or may be inferred from statements in the pleadings, they are hereby dismissed without prejudice. However, in doing so, the LSC does not waive any "substantive rights" arguments that the Complainants may make (or may have already made) in connection with Count X, vested rights claims, or similar issues.

I. While the Parties agree that the Respondents' demurrers and pleas in bar were filed first, and thus the Respondents believe they should argue first, if the Court wishes to hear argument in some other order, the Parties would ask that the Court let counsel know.

*History of the Zoning Amendments*

On January 5, 2000, the Board, finding that "the public necessity convenience, general welfare, and good zoning practice" so required, passed a resolution directing a review of the Comprehensive Plan by the Planning Commission and the initiation by the Board of a comprehensive review and amendment of the Loudoun County Zoning Ordinance and Map. At a meeting held on July 15, 2002, the Board, having adopted the Revised General Plan and Countywide Transportation Plan the previous year, directed that the Planning Commission conduct a review of the proposed remapping and the amended Zoning Ordinance text language prepared by staff and a private consulting firm. The Commission was charged to report its findings and recommendations to the Board no later than October 15, 2002.

Upon completion of the review by the Planning Commission, the Board caused a notice of a public hearing concerning the proposed amendments to

the Zoning Ordinance text and Map to be published once a week for two consecutive weeks in a newspaper of general circulation in Loudoun County. Pursuant to that notice, hearings were held on the amendments on November 2, 2002, and November 6, 2002. At the January 6, 2003, meeting of the Board, an ordinance was passed, adopting amendments to the Zoning Ordinance and Map, to be effective at 12:01 a.m., January 7, 2003.

## Judicial Review of the Zoning Amendments

Within the thirty days following the enactment of the "new" Loudoun County Zoning Ordinance and Map, numerous lawsuits were filed challenging the actions of the Board. The allegedly aggrieved property owners suggest that the Court should nullify the effect of the amendments. In addition, it is suggested by some of the Complainants that the actions of the Board violated their rights to the equal protection of the laws, for which they are entitled to relief under federal law. Both procedural and substantive claims have been addressed. While a variety of pretrial dispositive issues are before the Court for adjudication and are ripe for resolution at this time, the issue of whether the Board exceeded its authority and was unreasonable in its actions as to individual properties is not. The Court has previously ruled upon certain common vested rights issues. Those rulings are not before the Court at this time.

## Issues Presently before the Court

1. The Complainants assert that the ZOA are void in that the Board failed to include in either its initiating resolution of January 2000, or its subsequent resolution of July 2002, the requisite statutory language (Count I). In response, the Board contends that the language meets the requirements of the General Assembly and that this claim should be dismissed as a matter of law.

2. It is the contention of the Complainants that the Board failed to give notice of its intention to propose the amendments for passage or to make the full text of the amendments available to the public after the due publication of such intent to pass those amendments (Count IV). Such a failure, they suggest, is fatal to the ordinance. In addition, the Complainants suggest that there are no material facts in dispute concerning the Board's failure to give such notice and that the Court should summarily rule in their favor. The Board has responded with a challenge to the legal sufficiency of the claim. It is the Board's contention that proper notice to the public was given, as required by

law, and that the statute relied upon is not applicable to the passage of a zoning amendment. Complainants suggest this position is unwarranted and that the responsive pleading of the Board should be stricken.

3. Complainants allege that the October 2002 notice is deficient because it fails to contain either any reference of the Board's intent to adopt the ordinance or a descriptive summary of the action proposed (Count IX). Because such notice is required in order for the Board to exercise its zoning power, the Complainants contend the amendments are void. In addition, they ask that the Court rule summarily in their favor and strike the responsive pleading of the Board because of the absence of a factual dispute between the parties over the notice given. The Board contends the notice was adequate and that this claim is lacking in legal foundation and should be dismissed.

4. Complainants contend that the action of the Board with respect to the new AR-1 and AR-2 zoning districts was void because the public notice failed to comply with the statutory mandate concerning more intensive uses (Count VII). The Board requests that the Court dismiss the claim.

5. Both the Complainants and the Board contend that provisions of Loudoun County, Virginia, Zoning Ordinance § 1-103(H)(1) (1993) (the ordinance in effect immediately prior to the enactment of the amendments in January of 2003) are unambiguous. The Board contends that the construction urged by the Complainants (Count X), concerning vesting of applications "officially accepted" prior to January 6, 2003, is wrong and, when based upon a proper construction of the statute, the claim is without legal foundation and should be dismissed.

6. Several (fewer than six) of the Complainants contend that the notice given as to the rezoning of their parcels was lacking in the descriptive summary required by statute. They suggest the rezoning of these parcels from Rural Commercial (RC) to Agricultural Rural (AR-1) was void and that the RC district should continue (Count VI). The Board asserts that the advertisement was adequate and that this claim should be dismissed as lacking the requisite number of claims ripe for adjudication in this consolidated proceeding.

7. Complainants argue that the amendment to the Route 15 setback requirement was fixed without the requisite notice being given and that the adoption of the amendment (Loudoun County, Virginia, Zoning Ordinance § 5-900(A)(4)) is void. The Board challenges the legal sufficiency of this allegation.

8. Six or more of the individual Complainants have raised Equal Protection claims in their bills of complaint. Pursuant to the Court's directive concerning the hearing of pretrial dispositive motions, the Board filed

pleadings requesting that such claims be dismissed. The LSC has requested that the Court strike these responsive pleadings filed by the Board.

9. The LSC has agreed that the 42 U.S.C. § 1983 Claims are controlled by the Court's finding with respect to the Equal Protection claims. The Board has asked that these claims be dismissed.

10. The Board has asked that the challenges to the AR-1 and AR-2 Zoning Districts be dismissed with respect to those lacking standing to assert such claims.

11. The Board has asked that the challenges to certain overlay districts be dismissed with respect to those lacking standing to assert such claims.

A discussion of these issues follows.

## Procedural Posture of the Cases

Subsequent to the filing of the various individual bills of complaint challenging the ZOA, the Court entered a Decree of Consolidation on June 6, 2003. Va. Code Ann. § 8.01-267.1. After a review of the pleadings, the Court found that: (1) there were more than six cases pending on its docket challenging the recent enactment of amendments to the Loudoun County Zoning Ordinance (Zoning Ordinance Cases); (2) the Respondent (Board) had made a motion to consolidate these cases; (3) these cases involve common questions of law or fact; (4) these cases arose out of the same transaction, occurrence, or series of transactions or occurrences; (5) common questions of law or fact predominated and were significant to the actions; and (6) the consolidation order: (i) would promote the ends of justice and the just and efficient conduct and disposition of the actions; (ii) was consistent with each party's right to due process of law; and (iii) did not prejudice each individual party's right to a fair and impartial resolution of each action.

A Litigation Steering Committee was established and charged, among other things, with the filing of a Master Supplemental Pleading containing common issues to which the Board might then respond. Additionally, the Board would then respond to the Master Supplemental Pleading concerning common issues. The Decree invited the parties to identify those issues that they believed dispositive. In addition, individual Complainants were afforded the opportunity to opt out of the consolidated proceeding. Those issues have been identified and form the basis of the pleadings before the Court.

The parties have filed a plethora of pretrial pleadings, to wit: demurrers, pleas in bar, motions to strike, motions for summary judgment, and motions to dismiss those claims identified as common and dispositive. A consideration of these pleadings warrants the application of familiar principles of law.

The Court's consideration of the various demurrers is governed by those facts pleaded expressly or by implication, as well as those justly to be inferred from the pleading sought to be challenged. *Luckett v. Jennings*, 246 Va. 303 (1993); Va. Code Ann. § 8.01-273.

A plea in bar is raised as a responsive pleading when a defense to a claim can be reduced to a single question of fact. W. Hamilton Bryson, *Virginia Civil Procedure* 273 (3d ed. 1997). When raised in the instant proceedings, it shall be asserted that those pleas in bar are based on uncontroverted facts and that the taking of further evidence is not required.

In each case, the demurrers and pleas in bar shall clearly state the reasons for the pleading and shall be supported by extensive memoranda of law.

A motion to strike tests the sufficiency of a defense pleading, such as a demurrer. Va. Code Ann. § 8.01-274.

Summary judgment is only available where there are no facts genuinely in dispute. Va. Sup. Ct. R. 2:21.

A discussion of each of the issues raised follows.

*Count I: Did the Board of Supervisors of Loudoun County Fail to Comply with the Provisions of Va. Code § 15.2-2286, such that the Zoning Ordinance Amendments were Rendered Void ab Initio?*

Before a local governing body may amend its zoning ordinance, it must first pass a resolution or motion stating the public purpose for the amendment. Thus it is provided:

> [w]henever the public necessity, convenience, general welfare, or good zoning practice requires, the governing body may by ordinance amend, supplement, or change the regulations, district boundaries, or classifications of property. Any such amendment may be initiated (i) by resolution of the governing body. . . . Any such resolution or motion by such governing body or commission proposing the rezoning shall state the above public purposes therefor.

Va. Code Ann. § 15.2-2286(A)(7).

This provision has been interpreted as directing "local governing bodies to determine which of the four . . . purposes necessitates their action, and to state for which of those purposes it is acting." *Fairfax County v. Southern Iron Works*, 242 Va. 435, 443 (1991). Further, "the underlying purpose of a resolution initiating legislation is the basic or fundamental objective which

necessitates the governing body's action." *Id.* A failure to comply with the requirement to state the public purpose for the amendment is fatal to the amendment. *Town of Vinton v. Falcun Corp.*, 226 Va. 62 (1983).

The following procedural steps are a prerequisite to the exercise of the Board's power to enact the amendments to the Loudoun County, Virginia, Zoning Ordinance:

> *First,* it shall initiate the proposal by adopting a written resolution stating the underlying public purpose . . . [§ 15.2-2286];
>
> *Second,* it shall refer the proposal to the local planning commission for review . . . [§ 15.2-2285];
>
> *Third,* the planning commission shall give notice pursuant to the provisions of [§ 15.2-2204], conduct a public hearing, and report its recommendations to the Board of Supervisors [§ 15.2-2285];
>
> *Fourth,* upon receipt of the commission's report, the Board of Supervisors shall give the public notice and conduct its own public hearing [§ 15.2-2285].
>
> *By complying with these procedures, the governing body acquires the same authority to act upon a zoning proposal as it has to act upon other legislative matters* [§ 15.2-2285].

*Town of Vinton,* 226 Va. at 65-66 (emphasis added).

A failure to comply with any step in the process set forth above renders the action of the Board void *ab initio* and of no legal efficacy. *City Council of the City of Alexandria v. Potomac Greens Associates Partnership,* 245 Va. 371 (1993).

It has been suggested that to conform to the requirement of a statement of public purpose contained in the initiating resolution, the "mantra" set forth in the statute is required. That is, the initiating resolution must rigidly adhere to the very words of the statute that define the "public purpose" requirement. However, no such recitation is mandated. While the Court in *Southern Iron Works* approved the use of the terms "public necessity, convenience, general welfare, or good zoning practice," it did not limit the Board's proposed resolution to the use of the precise terminology set forth in the statute. While a recitation of the words of the statute suffice to satisfy the statement of public

purpose, the language used by the County is a logical subset of the purposes outlined by the General Assembly.

The Complainants claim that the text of the amendments was not available at the time of the initiating resolution. Although a failure to follow the statute may be fatal to the initiating resolution,[1] the Court finds that both the January 5, 2000, and July 15, 2002, resolutions satisfy the requirements of Va. Code Ann. § 15.2-2286(A)(7). There is no requirement in the statute that the text of the amendments be available at the time of the passage of the initiating resolution. The January 5, 2000, resolution expressly states in part:

> Whereas, the Board of Supervisors determines it appropriate and necessary to initiate a comprehensive review and updating of the comprehensive plan to address these and other issues of importance to the citizens of the community; and

> Whereas, the Board of Supervisors intends that the revised plan should be accompanied by comprehensive zoning amendments and other measures to implement the County's planning policies, and to this end wishes to so state its intent to review and amend the zoning ordinance and map in furtherance of the public convenience and necessity, the general welfare, good zoning practice, and the purposes of zoning.

The Board subsequently chose to focus on the element of "good zoning practice" when, having then adopted the *Revised General Plan* and Countywide Transportation Plan, it stated in its July 15, 2002, resolution: "Whereas, the Board of Supervisors has placed as its highest priority, its implementing the *Revised General Plan*, the comprehensive remapping and necessary amendments to the Zoning Ordinance." This statement is consistent with the public purpose of "good zoning practice."

In summary, the Court finds that the adopting resolutions meet the requirements of Va. Code Ann. § 15.2-2286(A)(7) and that the demurrer

---

[1] For purposes of this opinion, the Court has assumed that the use of the word "shall" in relationship to the requirement that the public purpose be stated in the initiating resolution is mandatory and not directory. This argument has been raised by the Board but is not determinative of the demurrer. *Tran v. Board of Zoning Appeals*, 260 Va. 654 (2000).

should be sustained to Count I of the First Amended Master Supplemental Bill of Complaint, and the Count dismissed.

*Count IV: Was the Board of Supervisors of Loudoun County Required to Comply with the Provisions of Va. Code § 15.2-427 in the Enactment of the Zoning Ordinance Amendments and, if so, Did Such a Failure Render the Amendments Void ab Initio?*

As noted earlier, the Supreme Court of Virginia has set forth four steps necessary to the enactment of the ZOA. Among other requirements is that of notice to the public. The notice required includes publication in a newspaper of general circulation in that county. Among other things, notice serves "to generate informed public participation by providing citizens with information about the content of the proposed amendments and the forum for debate concerning those amendments." *Glazebrook v. Board of Supervisors of Spotsylvania County*, 266 Va. 550, 555 (2003).

The notice provisions unique to the enactment of the ZOA are contained in Chapter 22 of Title 15.2 of the Code of Virginia.

Having determined the "public necessity, convenience, general welfare, and good zoning practice" so demanded, the Board directed the Planning Commission to: (1) initiate a review of the Comprehensive Plan, including an update and revision of the General Plan and a review of the Countywide Transportation Plan; (2) prepare ordinance amendments in coordination with the update of the Comprehensive Plan; (3) consider such amendments at public hearing; and (4) make recommendations to the Board. Va. Code Ann. §§ 15.2-2223, 15.2-2285.

Validity of the ZOA is contingent upon the Court's finding that:

1. The Planning Commission and the Board of Supervisors held at least one public hearing on the amendments, after notice, as required by Va. Code Ann. § 15.2-2204. Notice of the time and place of the hearing at which persons affected may appear and present their views has been published. The plan or ordinance need not have been advertised in full but may have been also advertised by reference. The advertisement must have contained a descriptive summary of the proposed action and a reference to the place or places in Loudoun County where copies of the plan, ordinance, or amendments might be examined. Va. Code Ann. § 15.2-2204(A);

2. The notice must have been published once a week for two successive weeks in a newspaper published or having a general circulation in Loudoun County. Va. Code Ann. § 15.2-2204(A);

3. The time and place of the hearing for which notice was given must have been not less than five days or more than twenty-one days after the second advertisement appeared in the newspaper. The notice given must have been published at least twice in the newspaper, with not less than six days elapsing between the first and second publication. Va. Code Ann. § 15.2-2204(A).

In addition to the notice by publication, there are other notice requirements that are both mandatory or discretionary depending upon the number of lots effected, their densities, and other factors deemed relevant by the Board. *See, e.g.,* Va. Code Ann. §§ 15.2-2204(B), 15.2-2205.

Both the Planning Commission and the Board of Supervisors were subject to public hearing requirements that are required as a condition precedent to acting upon the ZOA. Those hearing requirements are set forth in Va. Code Ann. § 15.2-2285. Therefore, the Legislature has provided, with respect to the meeting requirement, that:

> [t]he [planning] commission shall hold at least one public hearing on a proposed ordinance or any amendment of an ordinance, after notice as required by § 15.2-2204, and may make appropriate changes in the proposed ordinance or amendment as a result of the hearing. . . .

> Before approving and adopting any zoning ordinance or amendment thereof, the governing body shall hold at least one public hearing thereon, pursuant to public notice as required by § 15.2-2204, after which the governing body may make appropriate changes or corrections in the ordinances or proposed amendment. In the case of a proposed amendment to the zoning map, the public notice shall state the general usage and density range of the proposed amendment and the general usage and density range, if any, set forth in the applicable part of the comprehensive plan. However, no land may be zoned to a more intensive use classification than was contained in the public notice without an additional public hearing after notice required by § 15.2-2204. *Zoning ordinances shall be enacted in the same manner as all other ordinances.*

(Emphasis added.)

A fair reading of the statutes relative to the requirements of hearing and notice, applicable to the instant case, would limit the requirement of any

additional public notice and hearing to those situations where land is zoned to a more intensive use than that previously noticed for hearing.[2] The limiting language regarding additional publication requirements suggests that further notice would not be required except in those discrete circumstances identified by the General Assembly.

The LSC argues that the provisions of Va. Code Ann. §§ 15.2-1427, 15.2-2285, are applicable to the actions of the Board in this case. It is the contention of the Complainants that the Board failed to publish a descriptive notice of its intent to propose the ordinance amending the Zoning Ordinance once a week for two successive weeks prior to its passage. This failure, they suggest, is fatal to the amendments and renders the ordinance adopting them void *ab initio*.

As noted above, the General Assembly has mandated that "[z]oning ordinances shall be enacted in the same manner as all other ordinances." Va. Code Ann. § 15.2-2285(C). In addition, it has provided that:

[i]n counties, except as otherwise provided by law, no ordinance shall be passed until after descriptive notice of an intention to propose the ordinance for passage has been published once a week for two successive weeks prior to its passage in a newspaper having a general circulation in the county. The second publication shall be no sooner than one calendar week after the first publication. The publication shall include a statement either that the publication contains the full text of the ordinance or that a copy of the full text of the ordinance is on file in the clerk's office of the circuit court of the county or in the office of the county administrator. . . . Even if the publication contains the full text of the ordinance, a complete copy shall be available for public inspection in the offices named herein.

Va. Code Ann. § 15.2-1427(F).

The Litigation Steering Committee has called the Court's attention to an opinion of the Attorney General concerning the statutory requirements necessary to the enactment of a zoning ordinance or amendments to a zoning ordinance, in which he concluded:

---

[2] The issue of notice, hearing, and zoning to a more intensive use has been raised in these proceedings and will be discussed in connection with other pleadings.

Section 15.1-498 [current § 15.2-2285(C)] Code of Virginia (1950), as amended, applies specifically to the adoption of zoning ordinances and amendments thereto and must be followed by the board of supervisors.

This section provides in part: "Before approving and adopting any zoning ordinance or amendment thereof, the governing body shall hold at least one public hearing thereon, pursuant to public notice as required by § 15.1-431 [current § 15.2-2204], after which the governing body may make appropriate changes or corrections in the ordinance or proposed amendment; provided, however, that no additional land may be zoned to a different classification than was contained in the public notice without an additional public hearing after notice required by § 15.1-431 [current § 15.2-2204]. Such ordinances shall be enacted in the same manner as all other ordinances."

This section, after requiring a public hearing, etc., provides that any ordinance adopting or amending a zoning ordinance shall be *enacted* in the same manner as all other ordinances. Section 15.1-504 [current §§ 15.2-1426, 15.2-1427] of the Code, to which you refer, provides the manner for the enactment of all other ordinances.

I am, therefore, of the opinion that the board of supervisors is governed by § 15.1-498 [current § 15.2-2285] in amending the zoning ordinances and it must also follow § 15.1-504 [current §§ 15.2-1426, 15.2-1427] *in so far as applicable.*

1971-72 Ops. Va. Att'y Gen. 89 (emphasis added).

With respect to the opinions of the Attorney General, it is a matter of statutory construction in the Commonwealth that, "[t]he legislature is presumed to have had knowledge of the Attorney General's interpretation of the statutes, and its failure to make corrective amendments evinces legislative acquiescence in the Attorney General's view." *Browning-Ferris, Inc. v. Commonwealth*, 225 Va. 157, 161, 162 (1983) (authorities omitted).

The specific language of a statute controls the general and, in the instant case, the Court is of the opinion that the Opinion of the Attorney General is subject to the limiting language that compliance with § 15.2-1427 is required of the Board only "in so far as applicable."

The inclusion of such language is consistent with the General Assembly's expressed intent to harmonize the public's right to be intelligently informed and the Board's right to respond to public comment without encountering further procedural hurdles, with a perceived need for additional notice only in cases where persons will be affected most: zoning to a more intense use. This interpretation would appear consistent with the four-step analysis applied by the Supreme Court of Virginia in *Town of Vinton v. Falcun Corp.*, 226 Va. 62 (1983). Other than such notice, the mechanics of enactment remains the same.

An absence of a requirement to publish an additional notice of the intent to adopt and make available copies of the ordinance as amended available to the public prior to adoption lends support to the argument that the governing bodies must scrupulously adhere to the provisions of Va. Code Ann. § 15.2-2204, regarding notice in zoning cases. As will be seen later, the sufficiency of notice pursuant to Va. Code Ann. § 15.2-2204 is the subject of other pleadings.

Finding that further notice in this case, pursuant to Va. Code Ann. § 15.2-1427, was not required, the Court will sustain the demurrer and dismiss Count IV of the Amended Master Supplemental Bill of Complaint. The motions to strike the demurrer and for summary judgment filed by the Steering Committee are denied.

*Count IX: Are the Zoning Ordinance Amendments and the Environmental Overlay Districts Void ab Initio Because: (1) The Board Failed to Give Proper Notice or (2) The Board Failed to Give a Descriptive Summary of the Board's Proposed Actions as Required by Va. Code §§ 15.2-2204, 15.2-2285(C)?*

On October 31, 2003, the Supreme Court of Virginia decided the case of *Glazebrook v. Board of Supervisors*, 266 Va. 550 (2003). It establishes the framework for review of the adequacy of the notice required of the Board to act upon the ZOA. The Court in *Glazebrook* determined that the descriptive notice required by Va. Code Ann. § 15.2-2204(A) must be "sufficient." If the notice, when subject to objective review, fails to meet the test of "sufficiency," then such failure is fatal to the ordinance. In determining that the notice by publication of the Board of Supervisors of Spotsylvania County, Virginia, was lacking in required sufficiency, the Court found that:

> [w]e hold that the notice published by the Board did not contain a sufficiently descriptive summary of the proposed amendments to the Spotsylvania County zoning ordinances. No citizen could reasonably determine, from the notice, whether he or she was

affected by the proposed amendments except in the most general sense of being located in a particular type of zoning district. Nor could a citizen determine whether the proposed amendments affected zoning issues that were of interest or concern to the citizen. Given the number of issues subsumed under the heading "development standards," using that heading as a descriptive summary fails to inform citizens of the universe of possible zoning ordinance amendments in any meaningful way. Both the evolution of the statute and the treatment of analogous statutes illustrate that such a notice is inadequate under Code § 15.2-2204(A).

*Glazebrook* at 556.

The challenged portions of the advertisement in *Glazebrook* "stated the 'development standards' for the specified zoning districts in question would be amended." *Id.* at 556. Justice Lemons, writing for the Court, observed that:

[t]he "development standards," as the phrase is used in the ordinance, is a heading within which are a number of subheadings describing specific regulations. In other words, "development standards" is the umbrella title for regulations including minimum road frontage, residential and non-residential densities, lot areas for various uses, minimum lot width, and maximum height of structures on the land.

*Id.* at 556.

Statutory notice, both as to the time and place of the hearing upon the proposed amendments as well as the descriptive summary, reflects an intention of the legislature:

[t]o generate informed public participation by providing citizens with information about the content of the proposed amendments and the forum for debate concerning those amendments. There is no indication that the General Assembly expected affected citizens to engage in legal research in order to decide whether to participate in the hearing or to decide what their interest may be in a proposed amendment. . . . The history of § 15.2-2204(A) adds further illumination. Prior to 1992, the statute did not require the notice published by the locality to contain a "descriptive summary" or a summary of any kind. In 1992, the General Assembly inserted the "descriptive summary" requirement. Va. Acts 1992, ch. 757. This

change by the General Assembly suggests that it is not enough to provide information that will merely direct readers to the physical location of the actual text of the proposed amendments. The "descriptive summary" requirement goes beyond referral to the primary document.

*Id.* at 555, 556.

While the Supreme Court cautioned that it did not "attempt to dictate the exact language of future notices, nor . . . seek to establish a bright line rule," they have established the parameters within which this Court must evaluate the issue of notice. Should that notice be found inadequate, the ordinance amendments are void *ab initio. Id.* at 557.

The instant rezoning involved comprehensive textual and map amendments to the 1993 Loudoun County Zoning Ordinance. As a condition precedent to enactment of those amendments, the Board was required to conform to certain statutorily mandated notice requirements. Thus, it was required to adhere to the following:

> Plans or ordinances, or amendments thereof, recommended or adopted under the powers conferred by this chapter [Chapter 22 of Title 15.2] need not be advertised in full, but may be advertised by reference. Every such advertisement shall contain a descriptive summary of the proposed action and a reference to the place or places within the locality where copies of the proposed plans, ordinances, or amendments may be examined.

Va. Code Ann. § 15.2-2204(A).

"In the case of a proposed amendment to the zoning map, the public notice shall state the general usage and density range of the proposed amendment and the general usage and density range, if any, set forth in the applicable part of the comprehensive plan." Va. Code Ann. § 15.2-2285(C).

Whether a descriptive summary is sufficiently informative to be meaningful to the public is a question that is challenging for both local governing bodies and the courts. In its Petition for Rehearing filed in *Glazebrook,* the County of Spotsylvania suggested that:

> Local governing bodies need to know what they have to do to meet the statutory requirements of notice. Any uncertainty in the statutory standard is an issue for the General Assembly, not this Court, to address. As long as the statute requires merely "a

descriptive summary," any descriptive summary should pass muster. And any doubt about the "sufficiency" of a particular summary should be resolved in favor of the presumed validity of the legislative act.

In denying the Petition, this position was rejected by the Supreme Court of Virginia and is not the law. Moreover, this Court does not believe the burden upon localities, in preparing a meaningful descriptive summary, is as confusing or onerous as was suggested by the Board. As the Court observed in *Glazebrook*, there is a parallel to be drawn between the notice requirement in annexation proceedings and those in the passage of zoning amendments. *Glazebrook*, at 555; *Portsmouth v. Norfolk County*, 198 Va. 247, 251 (1956). Thus:

> [p]ublication . . . is not process but is designed to give notice to the public of the proposed annexation and to supply those who may be affected thereby, or interested therein, with certain information from which they may determine whether or not to act in support of or against the proposed annexation.

*Portsmouth*, at 251.

While there are conspicuous differences between the procedures governing the enactment of zoning and annexation ordinances, a condition common to both is scrupulous compliance with statutory notice. Va. Code Ann. § 15.2-3204.

With respect to the Zoning Map Amendments, the Board has stated general usage and density ranges of the proposed zoning amendments. These are contained in thirteen "bullet points" set forth in the Advertisement.

Before reviewing the sufficiency of the notice as to textual changes, the Court will dispose of several other issues raised by parties. The Notice of Public Hearing contains the following language:

> The LOUDOUN COUNTY BOARD OF SUPERVISORS will hold a public hearing in the Board of Supervisors' Meeting Room, County Government Ctr., 1 Harrison Street, S.E., Leesburg, Virginia, on Saturday, November 2, 2002, at 9:00 a.m. and Wednesday, November 6, 2002, at 3:00 p.m. and 6:00 p.m. *to consider the following*:

(Emphasis added.) The full text of the notice is printed in the Appendix to this opinion.

484

The LSC suggests that the notice is defective by reason of its failure to inform the public of an intent to adopt the amendments. Va. Code Ann. § 15.2-2204(A). However, the use of the word "consider," when read with the remaining provisions of the publication, denotes the same deliberative process as acting upon the proposed amendments. No particular words are required to satisfy the statute. It may be reasonably inferred that the Board intended to take some action as to the proposed amendments and that the action taken would be favorable to the adoption of the amendments. Accordingly, the Court finds that the reason for the notice has been sufficiently stated.

It appears that poor draftsmanship may have resulted in the following statement being included in the published notice:

> Unless otherwise noted in the above notices, full and complete copies of the above-referenced applications and related documents may be examined in the Loudoun County Building and Development, 1 Harrison Street, S.E., 2nd Floor, Leesburg, Virginia, from 9:00 a.m. to 4:30 p.m., Monday through Friday or call (703) 777-0397.

While the notice should have referenced the "place or places within the locality where copies of the proposed plans, ordinances, or amendments may be examined," the failure to so state is not fatal to the amendments. A fair reading of the notice would indicate that the full text of the amendments and map were available at the Building and Development Office.

Accordingly, the Court finds that the requirements of the statute have been met as to the location where copies of the amendments could be located.

However, the issue of the adequacy of the text amendments is more troubling. While *Glazebrook* had not been decided as of the date when the notice was given by the Board, its teaching must control the outcome of the instant pretrial dispositive motion.

The following information is obtained from the notice:

1. All articles of the 1993 Zoning Ordinance were to be amended for the purpose of implementing the policies of the *Revised General Plan*;

2. The amendments to the Zoning Ordinance were to be comprehensive and revise the entire ordinance in conjunction with a comprehensive amendment of the Zoning Map;

3. The amendments would replace, modify, delete, and add to various Articles and Sections of the Ordinance as necessary to implement policies of the *Revised General Plan* adopted by the Board of Supervisors on July 23, 2001. The Countywide Zoning Map would be affected by the amendments.

The amendments would change the zoning district designations, including zoning overlay districts on the County Zoning Map for the purpose of implementing the *Revised General Plan*. Major revisions would be made to include densities and policies conforming to the *Revised General Plan*;

4. The provisions proposed to be added or amended include without limitation the following:

a. New and revised requirements for the proposed new AR-1 and AR-2 Agricultural Rural Zoning Districts. AR-1 has a density of 1 dwelling unit per 20 acres or 1 dwelling unit per 10 acres, if clustered. AR-2 has a density of 1 dwelling unit per 50 acres and 1 dwelling unit per 20 acres if clustered;

b. A new TR-1 (including sub-districts TR1UBF) Transitional Residential Zoning District;

c. A new TR-2 Transitional Residential Zoning District;

d. A new TR-3 (including sub-districts TR3UBF, TR3LBR, TR3LF) Transitional Residential Zoning District;

e. A new TR-10 Transitional Residential Zoning District;

f. A new JLMA-1 Joint Land Management Area Zoning District;

g. A new JLMA-2 Joint Land Management Area Zoning District;

h. A new JLMA-3 Joint Land Management Area Zoning District;

i. A new JLMA-20 Joint Land Management Area Zoning District;

j. A new TREC Transit Related Employment Center Zoning District;

k. A new Village Overlay District;

l. A CLI Commercial Light Industry Zoning District;

m. A RC Rural Commercial Zoning District;

n. Most of the existing A-3 Agricultural Residential, A-10 Agricultural, and CR-1 Countryside Residential through CR-4 Countryside Residential properties in the western portion of the County would be remapped to AR-1 and AR-2;

o. Remapping of the A-3 Agricultural Residential, CR-1 Countryside Residential, and CR-2 Countryside Residential with the JLMA Joint Land Management Areas to new JLMA Joint Land Management Areas Districts with densities unchanged except for a proposed reduction in density to 1 dwelling unit per 20 acres for properties lying generally in the vicinity of Leesburg Airport;

p. Remapping the CR Countryside Residential areas in the vicinity of Arcola to PD-GI General Industrial with a floor area ratio up to a maximum of 0.4;

q. Remapping the PD-IP Planned Development-Industrial Park, A-3 Agricultural Residential, and CR Countryside Residential areas west of Dulles

Airport to PD-GI General Industrial with a floor area ratio up to a maximum of 0.4;

r. Remapping the Broad Run Farms area and substantial areas lying generally south of the Dulles Greenway and east of Goose Creek where recommended by the Comprehensive Plan for residential use from A-3 Agricultural Residential and CR Countryside Residential to R-1 [Single Family Residential][3] at a density of 1 dwelling unit per acre;

s. Expansion of the existing CLI Commercial Light Industry district and remapping of certain CR Countryside Residential to CLI Commercial Light Industry for properties lying generally on the south side of Route 50 east of Lenah Run at densities generally up to 0.35 floor area ratio;

t. Remapping much of the A-3 Agricultural Residential property lying generally south of Sycolin Creek and west of Goose Creek and east of Evergreen Mills Road (Route 621) to TR-10 Transitional Residential at a density of 1 dwelling unit per 10 acres with required clustering;

u. Remapping much of the A-3 Agricultural Residential property lying generally east of Route 15 and south of Braddock Road (Route 705) to TR-3 Transitional Residential (sub district TR3UBF [due to an absence of central utilities, development to occur on individual or communal systems]) at a density of 1 dwelling unit per 3 acres with required clustering;

v. Remapping much of the A-3 Agricultural Residential property lying generally north of Route 50 and east of Watson Road (Route 860) and south of Evergreen Mills Road (Route 621) to TR-3 Transitional Residential (sub-district TR3UBF) at a density of 1 dwelling unit per 3 acres with required clustering;

w. Remapping much of the A-3 Agricultural Residential property lying generally south of Braddock Road (Route 620) and west of Fairfax County to TR-3 Transitional Residential (sub-district TR3LBR [development to be served by public utilities]) at a density of 1 dwelling unit per 3 acres with required clustering;

x. Remapping CR Countryside Residential properties in the vicinity of Lenah lying generally on the north and south sides of Route 50 and north and south of Braddock Road (Route 705 & Route 620) and east of Route 15 to TR-1 Transitional Residential (sub-district TR1UBF [an absence of public utilities-development to occur on individual or communal wells and septic systems]) at a density of 1 dwelling unit per acre with required clustering;

---

[3] The descriptions shown in brackets were not found in the published notice but are included for clarification.

y. Remapping the strip of CR Countryside Residential properties generally on the south side of Braddock Road (Route 620) and west of Fairfax County to TR-1 Transitional Residential (sub-district TR1LF [presence of central water and sewer facilities]);

z. Imposing a new Village Overlay district upon the existing villages in the rural areas and upon the Village of Ashburn to achieve continuity and consistency of future development in the villages with existing development.

5. Provisions of the Ordinance would implement the Conservation Design policies in the *Revised General Plan*;

6. Provisions of the Ordinance would implement the Green Infrastructure policies in the *Revised General Plan* by means of, without limitation:

a. Imposition of environmental overlay districts such as a River and Stream Corridor Overlay District and a Limestone Overlay District and amending the Mountainside Development Overlay District.

7. Provisions to encourage and support rural economic development;

8. The public purpose for the amendments include those zoning purposes set forth in §§ 15.2.2200 and 15.2.2283 [sic] of the Code of Virginia.

In *Glazebrook*, the Supreme Court of Virginia noted:

[w]e must determine whether the notice published by the Board in the *Fredericksburg Free Lance-Star* contained a "descriptive summary" as required in Code § 15.2-2204(A). The notice merely stated that the "development standards" for the specified zoning districts would be amended. "Development standards," as the phrase is used in the ordinance, is a heading within which are a number of subheadings describing specific regulations. In other words, "development standards" is the umbrella title for regulations including minimum road frontage, residential and non-residential densities, lot areas for various uses, minimum lot width, and maximum height of structures on the land.

*We hold* that the notice published by the Board did not contain a sufficiently descriptive summary of the proposed amendments to the Spotsylvania County zoning ordinances. No citizen could reasonably determine from the notice whether he or she was affected by the proposed amendments except in the most general sense of being located in a particular type of zoning district. Nor could a citizen determine whether the proposed amendments affected zoning issues that were of interest or concern to the

citizen. Given the number of issues subsumed under the heading "development standards," using that heading as a descriptive summary fails to inform the citizens of the universe of possible zoning ordinance amendments in any meaningful way. Both the evolution of the statute and the treatment of analogous statutes illustrate that such a notice is inadequate under Code § 15.2-2204(A).

*Glazebrook*, at 556 (emphasis added).

For purposes of judicial review, published notice of the ZOA is inadequate as a matter of law if, "[n]o citizen could reasonably determine, from the notice, whether he or she was affected by the proposed amendments except in the most general sense of being located in a particular type of zoning district." *Id.* at 556.

Except as to the environmental overlay districts, an exhaustive review of the notice in this case offers the citizen such notice.

Citizens are provided identifying information with respect to districts and sub-districts. Density information is provided, including the use of clustering in modifying density requirements. Persons affected by the amendments relating to zoning districts for which densities and general location information is provided would, were they to read the entire advertisement, know if they should attend the hearings identified.

While more detail in crafting the advertisement would be preferred, except as to the environmental overlay districts, the instant notice complies with minimum statutory requirements necessary to avoid nullification of the subsequent amendments.

It is important to provide a balance of information so that the public is adequately informed without being overwhelmed by technical or legal language to the point that they cannot interpret the advertisement. An example of a balanced approach is provided in the commentaries to the ZOA. These commentaries are informative, concise, and well crafted. They would appear to have been an excellent starting point from which to craft an advertisement.

An example of one such commentary relating to the JLMA-3 District is as follows:

Article II: *Rural District Regulations*
[New] Section 2-1200 JLMA-3 (Joint Land Management Area-3)

*Commentary: Section 2-1200 JLMA-3 (Joint Land Management Area-3) is a proposed new zoning district intended to implement*

*the Town Policies in Chapter 9 of the Revised General Plan. The boundary of the JLMA sets the limits of municipal water and sewer extension and defines a significant change in land use policy between the areas within the JLMA and those lands outside the JLMA boundaries.*

*It is proposed that lands currently zoned Agricultural Residential-3 (AR-3) in the revised Joint Land Management Areas (JLMAs) surrounding the Towns of Leesburg, Round Hill, Hamilton, and Purcellville will be rezoned to this new JLMA-3 district.*

*The HLMA-3 district will maintain the density permitted in the A-3 district, 1 unit per 3 acres. However, it includes modifications to foster traditional and distinctive development patterns and uses that are more consistent in scale and function with the development found in towns.*

This is to be compared with the references to the JLMA-3 District in the published notice. That notice provided that (1) the amendments provided for a new JLMA-3 Joint Land Management Area Zoning District, (2) that the amendments provided for a remapping of the A-3 Agricultural Residential, CR-1 Countryside Residential, and CR-2 Countryside Residential with the JLMA Joint Land Management Areas to new JLMA Joint Land Management Areas Districts with densities unchanged, except for a proposed reduction in density to 1 dwelling unit per 20 acres for properties lying generally in the vicinity of Leesburg Airport, and (3) that the creation of the District would implement the *Revised General Plan.*

The requirements outlined in the *Glazebrook* decision are consistent with prior Supreme Court precedent, will lead to more informed debate, and are not onerous.

The Board argued in support of its position that it complied with the provisions of Va. Code Ann. § 15.2-2204(B) by mailing out notices. Mailing notices to affected landowners does not cure the defect in publication under Va. Code Ann. § 15.2-2204(A). Obligatory notice in one form does not cure deficiencies in another where the duty to publish is distinct.

With the exception of the environmental overlay district, the notice requirements were met, and the action of the Board in adopting the amendments to the Zoning Ordinance and Map is valid and not void *ab initio.* City of Alexandria v. Potomac Greens Assocs. Partnership, 245 Va. 371 (1993).

Counsel provided the Court with a Stipulation with respect to demurrers and pleas in bar filed by the Board, challenging the standing of several Complainants to challenge certain zoning overlay districts that affect their properties. A chart has been provided that reflects the overlay districts that do not exist on the Complainants' respective properties. It is further stipulated that no Complainant is challenging any zoning overlay district that does not exist on his or her property as reflected in the chart. They further agree that, by entering into the Stipulation, nothing contained in the Stipulation waives the right of any Complainant to pursue procedural challenges regarding the adoption of the 2003 Zoning Ordinance Amendments generally, including any procedural challenge that may result in the invalidation of one or more overlay districts nor the right of any Complainant to pursue a challenge to any other overlay district that exists on his or her property.

In the First Amended Master Supplemental Bill of Complaint for Declaratory Judgment, Injunctive and Other Relief Regarding Specified Common Issues, the Complainants, by the LSC, claim that the invalidity of the ZOA is general and the "Environmental Overlay Districts," in particular, are invalid. They suggest that the "Environmental Overlay Districts are invalid both because of a failure to give proper notice and because the Board failed to include the "Environmental Overlay District Maps" among the package of maps comprising ZMAP 2002-0014 that was voted upon and purportedly enacted on January 6, 2003.

The three environmental districts, referenced in the First Amended Bill of Complaint and the Stipulation, are as follows: River and Stream Corridor Overlay, Mountainside Development Overlay, and the Limestone Conglomerate Overlay Districts. According to the Stipulation, there are over 140 individual cases in which the River and Stream Corridor Overlay exist. More than forty individual cases are impacted by the Mountain and Stream Corridor Overlay. The Limestone Conglomerate Overlay affects nine cases. In the case of each of the affected overlay districts, at least six individual cases are affected.

The stated purposes of these environmental overlay districts are found in the zoning ordinance text.

Thus, the River and Stream Corridor Overlay District (RSCOD) is intended, "to promote, preserve, and enhance the important hydrologic, biological, ecological, aesthetic, recreational, and educational functions that river and stream corridors provide." Loudoun County, Virginia, Zoning Ordinance § 4-2001. The River and Stream Corridor Overlay District limits the use and development of properties subject to the overlay consistent with the stated purpose of this zoning tool.

The stated purpose of the Mountainside Development Overlay (MDOD) is, "to regulate land use and development on the mountains and mountainsides of the County. . . ." Loudoun County, Virginia, Zoning Ordinance § 4-1600. Like the other environmental overlay districts, the use and development of properties subject to the unique provisions of the zoning ordinance relating to such overlay district regulate this overlay.

Lastly, a Limestone Conglomerate Overlay District (LOD) is provided for the purpose of regulating "land use and development in areas underlain by limestone and in areas with Karst[4] features and Karst terrain. . . ." Loudoun County, Virginia, Zoning Ordinance § 4-1900. The use and development of properties lying within this overlay are impacted by its terms.

The RSCOD, MDOD, and LOD significantly restrict development in what are identified by the County as environmentally sensitive areas. In *Glazebrook*, the use of the term "development standards," when describing the proposed subject of amendments to district zoning regulations, was found insufficient as a matter of law. In the instant case, there was no statement as to the purpose of the amendment or the impact of such amendment upon the density or use of properties subject to the ordinance amendments. The only statement of purpose for the environmental overlay district contained in the Board's notice of a public hearing is that the amendments will "implement the Green Infrastructure policies in the *Revised General Plan* by various means including, without limitation, imposition of environmental overlay districts such as a River and Stream Corridor Overlay District and a Limestone Overlay District, and amending the Mountainside Development Overlay District."

Unlike the information furnished as to other amendments, the public is furnished no information as to permitted densities, uses, or building restrictions for parcels lying within these districts. There is little difference between the use of the terms "infrastructure policies" contained in the present notice under consideration and the use of the term "development standards" used in the Public Notice rejected in *Glazebrook*. The overlay districts impose significant restrictions on the use and development of land.

In contrast to the environmental overlay districts, the Board correctly set forth a descriptive summary as to the Village Overlay District. Thus, the amendments describe, "[i]mposing a new Village Overlay district upon the existing villages in the rural areas and upon the Village of Ashburn *to achieve*

---

[4] Karst: an area of irregular limestone in which erosion has produced fissures, sinkholes, underground streams, and caverns. *Webster's II New Collegiate Dictionary* (1995).

*continuity and consistency of future development in the villages with existing development.*" (Emphasis added.) This contains a clear succinct statement of purpose. It tells the reader where the district may be found, the purpose for which the district is imposed, and the effect on the overall development in the County.

However, the invalidation of the environmental overlay districts does not invalidate the remaining ZOA. The Loudoun County Zoning Ordinance contains a severability clause that provides:

> *Provisions Declared Invalid.* The several provisions of this Ordinance shall be separate in accordance with the following rules:
>
> (1) If any court of competent jurisdiction shall adjudge any provisions of this Ordinance to be invalid, such judgment shall not affect any other provisions of this Ordinance;
>
> (2) If any court of competent jurisdiction shall adjudge invalid the application of any provision of this Ordinance to a particular property, building, or structure, such judgment shall not affect the application of said provision to any other property, building, or structure.

Loudoun County, Virginia, Zoning Ordinance § 1-103(J).

Accordingly, while the insufficiency of the published notice undermines the validity of the Environmental Overlay Districts amendments, these provisions are severable from the other amendments with respect to the issue of notice.

The Court is mindful of the procedural posture of this case. Respondents have filed a demurrer to the allegations contained in the Bill of Complaint. Complainants have moved to strike the demurrer and for summary judgment. While the Court's analysis of the advertisement is an objective one based upon the record properly before the Court, it cannot address issues requiring a determination of contested issues of fact. Such an issue of fact is presented with respect to allegations regarding the inclusion of the environmental overlay district maps as part of the record acted upon by the Board of Supervisors in its enactment of ZMAP 2002-0014.

Based upon the instant record, the Court finds that the Demurrer should be sustained in part and overruled in part. Similarly, the Motion to Strike the Demurrer will be granted in part and denied in part. Complainants' Motion for Summary Judgment is denied in part and granted in part.

The Demurrer of the Board is sustained except as to the RSCOD, MDOD, and LOD amendments.

The Motion to Strike the Demurrer is denied except as to the RSCOD, MDOD, and LOD amendments.

The Court finds that the published notice with respect to the Zoning Amendments complied with the statutory mandates of Va. Code Ann. §§ 15.2-2204, 15.2-2285(C), except as to the notice given regarding the RSCOD, MDOD, and LOD amendments. In that the notice given failed to meet the statutory requirements as to the RSCOD, MDOD, and LOD amendments, such amendments are void *ab initio* and of no legal efficacy. An injunction will issue prohibiting the Respondents from enforcing the provisions of the ZOA relating to the RSCOD, MDOD, and LOD.

Accordingly, the Court will sustain the Demurrer, grant the Motion to Strike filed by the Complainants, and award Summary Judgment to the Complainants as to Count IX of the First Amended Master Supplemental Bill of Complaint.

*Count VII: Did the Board of Supervisors Approve By-Right Land Uses for the New AR-1 and AR-2 Districts That Were More Intensive Than the By-Right Uses Advertised for Those Districts Prior to the Board's Public Hearings on November 2 and 6, 2002, Without Holding an Additional Public Hearing as Required by Va. Code § 15.2-2285?*

The General Assembly has provided that:

[b]efore approving and adopting any zoning ordinance or amendment thereof, the governing body shall hold at least one public hearing thereon, pursuant to public notice as required by § 15.2-2204, after which the governing body may make appropriate changes or corrections in the ordinance or proposed amendment. In the case of a proposed amendment to the zoning map, the public notice shall state the general usage and density range of the proposed amendment and the general usage and density range, if any, set forth in the applicable part of the comprehensive plan. *However, no land may be zoned to a more intensive use classification than was contained in the public notice without an additional public hearing after notice required by § 15.2-2204.*

Va. Code Ann. § 15.2-2285 (emphasis added).

Complainants assert that the Board failed to comply with the above requirement by the following:

1. Reducing the required minimum acreage for a cluster subdivision in the AR-2 district from an advertised 100 acres to 60 acres without an additional public hearing. They suggest that this was a more intensive use, requiring an additional hearing.

2. Eliminating the requirement of a special exception for Telecommunications Monopoles in the AR-1 and AR-2 Districts as was originally advertised in October. They suggest that the adoption of an ordinance permitting such use in the AR-1 and AR-2 districts, by right, constituted a zoning to a more intensive use and thus, requiring an additional hearing.

3. Permitting the by-right development of Agritainment (corn mazes, hay rides, petting zoos for up to 600 visitors and 300 vehicles during certain hours) in the AR-1 and AR-2 districts, despite prohibiting these in the advertised amendments. They suggest that the adoption of this provision of the ordinance without an additional hearing violated the requirements for zoning to a more intensive use.

4. Increasing the number of campers from 15 to 30 permitted by right for a Day or Boarding Camp in the AR-1 and AR-2 Districts. They suggest that the increase from the advertised 15 campers to 30 without the additional hearing violated the requirements for zoning to a more intensive use.

The Board has challenged this Count by way of a demurrer and plea in bar. It is the position of the Complainants that, absent compliance with the statutory mandate of Va. Code Ann. § 15.2-2285(C), the Board was without authority to amend the zoning map to the AR classifications and their actions in doing so should be determined to be void *ab initio*.

Where the use is less intensive than that which was advertised, no additional notice need be published. *Board of Supervisors of Fairfax County v. Pyles*, 224 Va. 629 (1983). However, it is the contention of the Complainants that the listed uses are more intensive uses.

Applying the familiar principles applicable to demurrers and considering the scant record on the issue, the Court finds that the demurrer and plea in bar should be overruled. There is insufficient evidence upon which the Court can conclude that such zoning was to a more intensive use. The resolution of this Count will require consideration of further evidence.

*Count X: Does Loudoun County, Virginia, Zoning Ordinance of 1993 § 1-103 Prior to the Zoning Ordinance Amendments Require the County/Board to Process Pending Applications Pursuant to the Pre- Amendment 1993 Ordinance?*

The Board has demurred to Count X of the Amended Master Supplemental Bill of Complaint. The Zoning Ordinance in effect immediately prior to the adoption of the ZOA provided as follows: "This Ordinance shall apply to all applications officially accepted after the approval date of this Ordinance, except as provided below." Loudoun County, Virginia, Zoning Ordinance § 1-103(H)(1) (1993).

While the Court may harbor an interpretation of this particular provision, it may not render advisory opinions or exercise jurisdiction to make a binding adjudication of right where it has no jurisdiction to do so. The instant pleading raises an issue regarding an interpretation of the grandfathering provisions of the 1993 Zoning Ordinance. Complainants are required to exhaust the administrative remedy afforded them prior to seeking judicial relief.

The Zoning Administrator is charged with the responsibility, among other things, of interpreting the provisions of the Zoning Ordinance. Loudoun County, Virginia, Zoning Ordinance § 6-401. The Loudoun County, Virginia, Zoning Ordinance § 6-206 provides a right of appeal to the Board of Zoning Appeals of a decision of the Zoning Administrator interpreting provisions of the Zoning Ordinance. Va. Code Ann. § 15.2-2309. Prior to intervention by the Court, those administrative remedies must be exhausted. *Phillips v. Telum, Inc.*, 223 Va. 585 (1982).

Therefore, the Court will sustain the demurrer and dismiss Count X without prejudice to the Complainant to pursue their administrative remedies and such other judicial relief to which they are entitled and as they may be advised.

*Count VI: Did the Board Fail to Give the Required Statutory Notice with Respect to the Remapping of Certain Parcels that, Prior to the Zoning Ordinance Amendments of January 6, 2003, were Zoned RC-Commercial?*

Concerning the codification and recodification of zoning ordinances, the General Assembly has provided:

> [o]rdinances relating to zoning and the subdivision of land may be included in any codification or recodification of ordinances; however, no change, alteration, amendment, deletion, or addition

of a substantive nature shall be made and no new material of a substantive nature shall be added to such ordinances unless, prior to the date of adoption of such codification or recodification, notice of such proposed changes, alterations, amendments, deletions, or additions shall be published as required by the Code of Virginia and public hearings held thereon as provided by the Code of Virginia for adoption and amendment of zoning and subdivision ordinances. Renumbering or rearranging of sections, articles, or other divisions of any such ordinance shall not be deemed to be a change, alteration, or amendment of a substantive nature.

Va. Code Ann. § 15.2-1433.

The Court has previously discussed in detail the notice requirements applicable to zoning amendments as set forth in Va. Code Ann. §§ 15.2-2204 and 15.2-2285. Reference is made to such earlier comments.

It is the contention of the Complainants that the Board failed to give notice as required by statute with respect to the remapping of lands from the existing RC-Rural Commercial to other zoning districts. There were, it is suggested, approximately 84 parcels of land zoned RC-Rural Commercial and the Zoning Map Amendments classified approximately 58 of those districts to other districts without proper notice as required by Va. Code Ann. § 15.2-2285(C). As previously noted, amendments to the Zoning Map may only be affected after notice is given to the public that includes, *inter alia*, a statement of the usage and density range of the proposed amendment and the usage and density range, if any, set forth in the applicable part of the comprehensive plan.

The Board has filed a demurrer and a Motion to Dismiss the Individual Supplemental Bill of Complaint filed by the individual Complainants, Nellco and Gas Mart.

Without determining the underlying merits of this notice issue, the Court is of the opinion that both Count VI and the Individual Supplemental Bill of Complaint should be severed from the instant case. Fewer than six cases are involved in the instant challenge.

Strict adherence to the terms of the Decree of Consolidation is warranted. The intent in consolidating these matters was to address common issues of law and fact that have been identified by the Court and affect more than six individual Complainants.

Given the unique character of the merits of the underlying claims, the number of pretrial dispositive issues, the need for an orderly administration of claims, and the unique provisions of Va. Code Ann. § 8.01-267.3, the Court

declines to either utilize the provisions of the Multiple Claims Act, Va. Code Ann. § 8.01-267.1, or fashion a more traditional consolidation or coordination of common issues. John L. Costello, *Virginia Remedies*, §§ 6-13 (2d ed. 1999).

Accordingly, the Motion to Dismiss this claim, because fewer than six Complainants are affected by the notice, is granted without prejudice to the individual Complainants to raise such matters in their individual case(s). On its own motion, the Court will lift the stay and permit the individual complainants to proceed upon the matter raised in Count VI upon a praecipe and notice to the Board should they be so advised.

This is without prejudice to the Board to raise this issue in a later proceeding, should they be so advised.

*Count VIII: Did the Board Fail to Provide Proper Notice of its Amendment to the Setback Requirement in Loudoun County, Virginia, Zoning Ordinance § 5-900(4) as Required by Va. Code §§ 2-1433, 2-2204, and 2-2205?*

This issue involves a specific setback building line. The 1993 Zoning Ordinance provided for a 200-foot building setback for Route 15. Loudoun County, Virginia, Zoning Ordinance § 5-900. As amended by the Board on January 6, 2003, this provision was revised as follows:

Section 5-500 Setbacks From Specific Roads and the W&OD Trail. . .

(A) Building Setbacks From Roads. . . .

Route 15. 200 Feet. *For lots whose depth is less than 250 feet, the setback may be reduced two feet for every foot the lot depth is less than 250 feet, but in no case may the setback be less than the minimum required yard established by the underlying zoning district.*

(2003 amendment is in italics).

It is the contention of the Complainants that the Board failed to advertise, or consider at the November pubic hearing, any text amendments to the Route 15 setback. They argue that the staff submitted the text language in the December 20, 2002, draft for the first time and the Board adopted it at its January 6, 2003, hearing. In line with the previous arguments made with

respect to notice, a failure to give required notice would render this amendment void *ab initio*.

The Board has demurred to Count VIII.

The instant count fails to allege that any of the properties in the Consolidated Cases are properties less than 250 feet in depth that would be affected by the amendment.

The demurrer will be sustained with leave granted to replead.

*Equal Protection and 42 U.S.C. § 1983: Do the Individual Bills of Complaint State Claims that the Board's Adoption of the Comprehensive Amendments to the Zoning Ordinance and Map Deprived them of Equal Protection of the Laws for Which They May Recover Pursuant to 42 U.S.C. § 1983?*

The Supreme Court of Virginia has established a three-pronged analysis to be applied by trial courts in evaluating the Equal Protection claims raised in these individual zoning cases for which relief is sought under 42 U.S.C. § 1983. To survive demurrer, a claim brought for a violation of the Equal Protection Clause must state sufficient material facts to support the following: "(1) that the complainant has been treated differently from others who are similarly situated, (2) that the mistreatment was intentional, and (3) that no rational basis existed for the difference in treatment." *Dawson, L.C. v. Loudoun County Supervisors*, 59 Va. Cir. 517 (2001).

The County contends in its demurrer and pleas in bar that there are more than six individual Complainants who seek relief in discrete Equal Protection claims and that, in none of those cases, do the pleadings measure up to the standard enunciated in *Dawson*. The LSC has requested that the Court strike the County's pleading as outside the scope of the Decree of Consolidation and lacking in specificity required on demurrer. Va. Code Ann. § 8.01-273.

It is the position of the Committee that it did not, and could not, plead such individualized claims in the First Amended Master Supplemental Bill of Complaint for Declaratory Judgment, Injunctive and Other Relief Regarding Specified Common Issues. Thus, the Complainants assert that the Court will have to make an individualized determination that a particular Complainant's pleading is legally insufficient. Therefore, absent a specific reference in the demurrer or plea in bar to an individual complaint, the Court lacks sufficient basis to make a determination of the issue.

The Board has indicated that it has expressly withdrawn its demurrer and plea in bar in those cases where there has been no claim raised by individual

complainants under the Equal Protection Clause of the United States Constitution.

Counsel for the Board has been careful to note the distinction to be made between the instant Constitutional claims and individual state court challenges based upon alleged unreasonable and arbitrary zoning practices. Such challenges are not before the Court in these consolidated proceedings.

After reviewing the various individual pleadings, it is the opinion of the Court that, in no case where an Equal Protection Clause violation has been raised, does that pleading survive the test for sufficiency established by the Supreme Court of Virginia. Furthermore, it is an issue that is, in fact, common to all of those pleadings where pleaded and susceptible to being raised on demurrer, but not by a plea in bar.

More than six cases are affected by this decision.

Accordingly, the Court will overrule and strike the plea in bar, deny the motion to strike the demurrer, sustain the demurrer with leave for the Complainants to replead. The Court will grant each individual Complainant, where applicable, leave to file amended pleadings. Any amendment must contain the factual allegations mandated by the Supreme Court of Virginia.

*Standing to Challenge the AR-1 and AR-2 Zoning Districts: With the Exception of the Following Individual Cases: Broad Run Village, L.C. v. Board of Supervisors, Chancery No. 22453, Circuit Court of Loudoun County; Nancy H. O'Connor v. Board of Supervisors, Chancery No. 22557, Circuit Court of Loudoun County; and Rock Springs Properties, L.L.C. v. Board of Supervisors, Chancery No. 22573, Circuit Court of Loudoun County, Do the Other Individual Complainants in Six or More Cases Lack Standing to Challenge the AR-1 and AR-2 Zoning Districts?*

A party must have standing to assert a claim for declaratory relief. To have standing is to possess a personal stake in the outcome of the zoning of a particular district. Standing is predicated upon a justiciable controversy in the subject matter of the suit in one's own right or a representative capacity. *Cupp v. Board of Supervisors*, 227 Va. 580, 590 (1984). It has been held of standing, "The concept of standing concerns itself with the characteristics of the person or entity who files the suit. The point of standing is to ensure that the person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case." *Id.* at 589.

The Board concedes that three of the complainants have interests in properties rezoned to AR-1 and AR-2 zoning districts under the ZOA. It has:

[l]ooked at the information that the LSC [Litigation Steering Committee] has submitted to support its argument in this regard and agrees with the LSC that some portion of the properties at issue in these three lawsuits are zoned to either the AR-1 or AR-2 zoning districts. Therefore, the Board will withdraw its demurrer and plea in bar as to these three cases only.

*Respondents' Reply Memorandum Supporting Demurrer and Plea in Bar to Challenges to AR-1 and AR-2 Zoning Districts Based Upon Lack of Standing.*

The LSC has suggested in its papers that those individual Complainants, other than those having such property interests, may have standing to challenge these zoning districts. To the extent the Committee would expand the concept of standing to those who, although not having a property interest subject to the AR-1 or AR-2 districts, may have standing to challenge other provisions of the ZOA, such an expansive concept of standing is rejected. *Blanton v. Amelia County*, 261 Va. 55 (2001).

To the extent an individual Complainant may seek to challenge the AR-1 and AR-2 districts, they must have standing to do so. This is an issue best addressed to a factual inquiry. While an affidavit has been filed and a response made by the LSC, the Court believes that the demurrer should be overruled. However, the Board may present evidence on the issue within the context of these proceedings since there are more than six individual complainants affected by the plea. The plea in bar is denied without prejudice at this time.

*Standing to Challenge the Zoning Overlay Districts: Do Certain of the Individual Complainants Lack Standing to Assert Challenges to the Zoning Overlay Districts?*

Only those individual properties zoned into one or more of the overlay districts may challenge the district amendment. The Court has previously noted that the individual properties included within these consolidated proceedings that have standing to assert an objection have been identified by stipulation as having properties upon which an overlay district exists. These properties would have standing to challenge the noted environmental overlay districts individually and collectively in these consolidated pretrial proceedings.

As noted, they have successfully tested the validity of the overlay districts. The Court found the requisite notice precedent to passage was lacking. Those properties lacking such standing may not raise this issue, and

the plea in bar is sustained as to such individual challenges. Thus, the demurrer is overruled.

This case will be continued.

## APPENDIX

### PUBLIC HEARING

The Loudoun County Board of Supervisors will hold a public hearing in the Board of Supervisors' Meeting Room, County Government Ctr., 1 Harrison Street, S.E., Leesburg, Virginia, on Saturday, November 2, 2002, at 9:00 a.m. and Wednesday, November 6, 2002, at 3:00 p.m. and 6 p.m. to consider the following:

### ZOAM 2002-2003
PROPOSED AMENDMENTS TO ALL ARTICLES OF THE
1993 ZONING ORDINANCE FOR THE PURPOSE OF IMPLEMENTING
THE POLICIES OF THE REVISED GENERAL PLAN

Pursuant to Sections 15.2-2204 and 15.2-2285 of the Code of Virginia and a Resolution regarding Review of the Comprehensive Plan and Zoning Ordinance adopted by the Board of Supervisors on January 5, 2000, the Loudoun County Board of Supervisors hereby gives notice that it will consider comprehensive amendments to the *1993 Loudoun County Zoning Ordinance* (the "Ordinance"). Such amendments would revise the entire Ordinance in conjunction with a comprehensive amendment to the Zoning Map. Such amendments would add, replace, modify, delete, and add to various Articles and Sections of the Ordinance as necessary to implement policies of the *Revised General Plan* adopted by the Board of Supervisors on July 23, 2001. Provisions that are proposed to be added or amended include, without limitation, the following:

New and revised requirements for the proposed new AR-1 and AR-2 Agricultural Rural zoning districts: the proposed new TR-1 (including sub-districts TR1UBF, TR1LF), TR-2, TR-3 (including sub-districts TR3UBF, TR3LBR, TR3LF), and TR-10 Transitional Residential zoning districts; the proposed new JLMA-1, JLMA-2, JLMA-3, and JLMA-20 Joint Land Management Area zoning districts; the proposed new TREC Transit Related Employment Center zoning district; the proposed new Village Overlay District; the CLI Commercial Light Industry zoning district, and the RC Rural Commercial zoning district;

Provisions to implement the Conservation Design policies in the *Revised General Plan*;

Provisions to implement the Green Infrastructure policies in the *Revised General Plan* by various means including, without limitation, imposition of environmental overlay districts such as a River and Stream Corridor Overlay District and a Limestone Overlay District and amending the Mountainside Development Overlay District; and

Provisions to encourage and support rural economic development. The public purposes for these amendments include those purposes of zoning set forth in Sections 15.2-2200 and 15.2-2283 of the Code of Virginia.

ZMAP 2002-2004
PROPOSED AMENDMENTS TO THE COUNTYWIDE
ZONING MAP FOR THE PURPOSE OF
IMPLEMENTING THE POLICIES OF
THE REVISED GENERAL PLAN

Pursuant to Sections 15.2-2204 and 15.2-2285 of the Code of Virginia and a Resolution regarding Review of the Comprehensive Plan and Zoning Ordinance adopted by the Board of Supervisors on January 5, 2000, the Loudoun County Board of Supervisors hereby gives notice that it will consider comprehensive amendments to the Countywide Zoning Map. Such amendments would change the zoning district designations, including zoning overlay districts, on the county Zoning Map for the purpose of implementing the *Revised General Plan* (the "Plan") adopted by the Board of Supervisors on July 23, 2001. Major revisions would include, without limitation, the following revisions to conform to recommended densities and policies of the Plan:

Remapping most of the existing Agricultural Residential (A-3), Agriculture (A-10), and Countryside Residential (CR-1 through CR-4) properties in the western portion of the county to Agricultural Rural AR-1, at a density of 1 dwelling unit ("d.u.") per 20 acres (or, if clustered, 1 d.u. per 10 acres), and AR-2 at a density of 1 d.u. per 50 acres (or, if clustered, 1 d.u. per 20 acres);

Remapping the AR-3, CR-1, and CR-2 districts within the Joint Land Management Areas (JLMA) to new JLMA districts with densities generally unchanged except for proposed reduction in density to 1 d.u. per 20 acres for properties lying generally in the vicinity of the Leesburg Airport;

Remapping the residential CR areas in the vicinity of Arcola to PD-GI General Industrial with Floor Area Ratio ("FAR") up to a maximum of 0.4;

Remapping the Planned Development-Industrial Park (PD-IP), A-3, and CR areas west of Dulles Airport to PD-GI General Industrial with FAR up to a maximum of 0.4;

Remapping the Broad Run Farms area and substantial areas lying generally south of the Dulles Greenway and east of Goose Creek, where recommended by the Plan, for residential use from A-3 and CR to R-1 at a density of 1 d.u. per acre;

Expansion of the existing Commercial Light Industry (CLI) district and remapping of certain CR property to CLI for properties lying generally on the south side of Route 50 east of Lenah Run at densities generally up to 0.35 FAR;

Remapping much of the A-3 property lying generally south of Sycolin Creek and west of Goose Creek and east of Evergreen Mills Road (Route 621) to Transitional Residential TR-10 at a density of 1 d.u. per 10 acres with required clustering;

Remapping much of the A-3 property lying generally east of Route 15 and south of Braddock Road (route 705) to Transitional Residential TR-3 (sub-district TR3UBF) at a density of 1 d.u. per 3 acres with required clustering;

Remapping much of the A-3 property lying generally north of Route 50 and east of Watson Road (Route 860) and south of Evergreen Mills Road (Route 621) to Transitional Residential TR-3 (sub-district TR3UBF) at a density of 1 d.u. per 3 acres with required clustering;

Remapping much of the A-3 property lying generally south of Braddock Road (Route 620) and west of Fairfax County to Transitional Residential TR-3 (sub-district TR3LF) at a density of 1 d.u. per 3 acres with required clustering;

Remapping much of the A-3 property lying generally south of Braddock Road (Route 620) to the east of Prince William County and west of Fairfax County to Transitional Residential TR-3 (sub-district TR3LBR) at a density of 1 d.u. per 3 acres with required clustering;

Remapping CR properties in the vicinity of Lenah lying generally on the north and south sides of Route 50 and north and south of Braddock Road (Route 705 & Route 620) and east of Route 15 to Transitional Residential TR-1 (sub-district TR1UBF) at a density of 1 d.u. per acre with required clustering;

Remapping the strip of CR properties generally on the south sides of Braddock Road (Route 620) and west of Fairfax County to Transitional Residential TR-1 (sub-district TR1LF) at a density of 1 d.u. per acre with required clustering;

Imposing a new Village Overlay district upon the existing villages in the rural areas and upon the Village of Ashburn to achieve continuity and consistency of future development in the villages with existing development.

The public purposes for these amendments include those purposes of zoning set forth in Sections 15.2-2200 and 15.2-2283 of the Code of Virginia.

*Unless otherwise noted in the above notices, full and complete copies of the above-referenced applications and related documents may be examined in the Loudoun County Building and Development Department, 1 Harrison Street, S.E., 2nd Floor, Leesburg, Virginia, from 9:00 a.m. to 4:30 p.m., Monday through Friday or call (703) 777-0397.*

All members of the public will be heard as to their views pertinent to these matters. Citizens are urged to call to sign up to make a presentation at the public hearing. Individual citizen comments and organizations will be limited to three minutes so that all in attendance may have the opportunity to speak. Written comments are encouraged and may be submitted to the Deputy Clerk of the Board of Supervisors. Please call the Board of Supervisors' Office at (703) 777-0204 to register to speak. Registrations will begin Tuesday, October 22, 2002. Speakers who anticipate providing written copy of their comments are kindly requested to provide 15 copies to the Deputy Clerk.

Hearing assistance is available for meeting in the Board Room. If you require any type of reasonable accommodation as a result of a physical, sensory, or mental disability to participate in this meeting, please contact County Administration at (703) 777-0200. Three days notice is requested. FM Assistive Listening System is available at the meetings.

By order of Scott K. York, Chairman, Loudoun County Board of Supervisors.

\# 460001 AO-055882*10/16/02-2T.

April 19, 2005

This case came before the Court for the entry of a Decree consistent with the opinion and mandate of the Supreme Court of Virginia in *Gas Mart Corp. et al. v. Board of Supervisors of Loudoun County et al.*, Record No. 041455 (March 3, 2005), and upon the motion of certain "Citizen Landowners" affected by the entry of such Decree to intervene. The affected parties and interveners presented written and oral argument before the Court on April 15, 2005. Based on such arguments, the Court indicated that it would enter a Decree permitting intervention by the "Citizen Landowners" pursuant to Va. Sup. Ct. R. 2:15. The Citizen Landowners have a "sufficient interest in the

subject matter of the case." *Huber v. Loudoun County Supervisors*, 55 Va. Cir. 318, 319 (Loudoun 2001) (quoting *Cupp v. Board of Supervisors*, 227 Va. 580, 589, 318 S.E.2d 407 (1984)). The remaining issue of the entry of a Decree consistent with the *Gas Mart* decision was taken under advisement.

The Court will enter the Decree tendered by the Board of Supervisors. It reflects the distinction drawn between the text ("Conservation Design policies") and the Zoning Map (AR-1 and AR-2 districts) affected by the failure of the Board of Supervisors to advertise in accordance with the statutory mandate. Va. Code Ann. § 15.2-2204(A); *Glazebrook v. Board of Supervisors*, 266 Va. 550 (2003). The proposed Decree properly addresses the impact of the decision on the zoning of the affected properties. That is, having been declared void *ab initio*, any attempt by the Board of Supervisors to change or avoid the then existing Zoning Map designations of the affected parcels was ineffectual and the properties will remain zoned to the districts to which they were mapped prior to the enactment of the Zoning Ordinance Amendments on January 6, 2003.

Counsel for the Board of Supervisors may submit the Decree previously drafted with the inclusion of the granting of intervention to the "Citizen Landowners" for purposes of arguing the Decree. The consolidated proceedings will be continued.

## May 19, 2005

The Court last wrote to counsel on April 19, 2003. In that letter, the Court set out its finding concerning how the mandate from the Virginia Supreme Court would be implemented. Thus, counsel for the Board of Supervisors was instructed to submit his draft Decree, properly endorsed, for entry by the Court. In doing so, the Court recognized the appropriateness of such action in the following words:

> [t]he Court will enter the Decree tendered by the Board of Supervisors. It reflects the distinction drawn between the text (Conservation Design Policies) and Zoning Map (AR-1 and AR-2 districts) affected by the failure of the Board of Supervisors to advertise in accordance with the statutory mandate. Va. Code Ann. § 15.2-2204(A); *Glazebrook v. Board of Supervisors*, 266 Va. 550 (2003). The proposed Decree properly addresses the impact of the decision on the zoning of the affected properties. That is, having been declared void *ab initio*, any attempt by the Board of Supervisors to change or avoid the existing Zoning Map

designations of the affected parcels was ineffectual and the properties will remain zoned to the districts to which they were mapped prior to the enactment of the Zoning Ordinance Amendments on January 6, 2003.

Having heard nothing from counsel concerning the requested Decree, the Court instructed its clerk to make inquiry concerning its whereabouts. In response to that inquiry, the Court received an endorsed Decree as well as a Motion to Reconsider filed by the Citizen Landowners Interveners. The Motion to Reconsider suggests nothing that the Court has not already maturely considered, or that would militate a differing result from that already enunciated. Further argument is neither necessary nor warranted.

Accordingly, the Court asks that the County Attorney prepare a supplemental Decree that denies the Motion to Reconsider. Concurrently with the mailing of this letter opinion, the Decree reflecting the Court's earlier letter opinion has been entered.

However, what the Court deems as the Interveners' continued misplaced reliance on *Board of Supervisors v. Rowe*, 216 Va. 128 (1975), as applied to the instant case, warrants further comment.

Thus far, the Court has not addressed the issue of whether the zoning ordinance amendments represent an arbitrary and capricious exercise of the legislative function of local government as applied to the property of any one or more of the individual complainants. These are substantive issues unrelated to the myriad of procedural questions addressed thus far by this Court and by the Supreme Court of Virginia.

The Supreme Court of Virginia reversed in part and affirmed in part the findings of this Court relative to these procedural issues. Most significant of these was the finding that the notice precedent to adoption of the Map Amendments, rezoning western Loudoun to AR-1 and AR-2 districts, failed to meet the requirements of particularity specified by the General Assembly. Because the Board failed to provide such notice, it failed to acquire the jurisdiction or power to act. In other words, the issue presented today is not whether the Board acted reasonably in providing for such districts, but whether the Board could act upon such changes in the first instance.

Any legislative act of the Board, relative to the failure to follow statutorily mandated procedures, is invalid not only from when it became law, but from the time it was first advertised for public comment. Thus, attempts to amend are said to be void *ab initio*, or from the inception.

Contrariwise, the issues in *Board of Supervisors v. Rowe*, 216 Va. at 128, involved challenges to the substance of the zoning amendments and the

appropriate response to the invalidation of such substantive provisions on appeal. As previously noted, the Court has not, and will not, review the effect of the amendments on individual property owners until the Board has obtained the power to act. The Board does so only by following the necessary steps outlined by the General Assembly to exercise the power to control the use and development of land.

The Commonwealth of Virginia adheres to the Dillon Rule limiting the exercise of legislative power by local government.

> In Virginia, the powers of boards of supervisors are fixed by statute and are limited to those conferred expressly or by necessary implication. . . . This rule is a corollary to Dillon's Rule that municipal corporations have only those powers expressly granted, those necessarily or fairly implied therefrom, and those that are essential and indispensable.

*Board of Supervisors v. Horne*, 216 Va. 113, 117 (1975) (authorities omitted).

When, as in the instant case, the General Assembly prescribes conditions precedent to the exercise of the power by a locality, the power must be exercised in the manner designated by the legislature. *City of Richmond v. Board of Supervisors of Henrico Co.*, 100 Va. 679 (1958); *Town of Vinton v. Falcun Corp.*, 226 Va. 62 (1983).

Statutory notice serves "[t]o generate informed public participation by providing citizens with information about the context of the proposed amendments and the forum for debate concerning those amendments." *Glazebrook*, 266 Va. at 555. Publication requirements involve substantive rights of the public to be heard on matters affecting constitutionally protected property interests. *King v. Hening*, 203 Va. 582, 586 (1962); *Portsmouth v. Norfolk*, 198 Va. 247 (1956); *Continental Baking Co. v. City of Charlottesville*, 202 Va. 798 (1961). In addition, they help to define the limits within which affected landowners may challenge the reasonableness of legislative acts. Thus, a responsible, responsive, and participatory government depends on the adequacy of the notice provided.

If the amendments were adopted without the required notice, they are considered void *ab initio*, and therefore, by definition are void from the outset. The resulting impact on existing zoning is as if no government action had taken place at all. In other words, the action taken by the Board to change the existing Zoning Map from an A-3 classification to the AR-1 and AR-2 classification was ineffectual. *Town of Jonesville v. Powell Valley Village, Ltd.*, 254 Va. 70 (1997); (distinguishing *Rowe*, holding that there was no prior

zoning ordinance, so the effect of the current ordinance being found void *ab initio* was to return the property to its previous zoned status). *See City of Alexandria v. Potomac Green Associates*, 245 Va. 371 (1993).

Citizen Landowners place great emphasis on the fact that the Complainants filed a Supplemental Brief on April 19, 2005. That brief was received in Chambers after the Court finalized its letter opinion of the same date. In any event, the Court has now had access to, and reviewed, the written memorandum and oral arguments of all parties.

While not binding on this Court, the decisions from other jurisdictions lend support to the instant decision. *Fedus v. Zoning and Planning Commission*, 2005 Conn. Super. LEXIS 153 (Conn. Super. Ct. January 19, 2005); *Town of Islip v. Paliotti*, 196 A.D. 2d 648, 601 N.Y.S. 2d 926 (1993); *Mahaffey v Forsyth County*, 99 N.C. App. 676, 394 S.E.2d 203 (1990); *Stassi v. Ransom Township Zoning Hearing Bd.*, 54 Pa. D. & C. 4th 303 (2001).

The decision of the Virginia Supreme Court involves the adequacy of the public notice given to the property owners who sought to challenge it through the process of judicial review. Notice and the opportunity to be heard are core concepts of both judicial and legislative due process. A citizen's right to make known his or her opinions in matters affecting development-based expectations and the use of property have been identified by the highest legislative and judicial branches of the Commonwealth as essential to the exercise of power to zone by local legislative bodies. While this Court reached a different conclusion with respect to the adequacy of notice, the implications of the absence of such notice and the subsequent legislative process in Virginia are clear.

From the vantage point of the concerned citizen landowners, there seems to be little difference between those persons who, lacking notice, wake up to find the Board has limited the way in which their property may be used and others who, because their neighbor lacked such notice, rise to a new day only to find the Court has restrained them from using their property until such time as the Board gives such notice. In the case of the former, the result is attendant to the impermissible legislative action that the Virginia Supreme Court has prohibited. In the case of the latter, the result would flow from the proposal relied upon by the Interveners. In either event, the failure to give notice has affected significantly the substantive property rights of individuals. Under such circumstances, equity would compel that the development-based expectations of the property owner are that he or she is permitted to use his or her property consistent with common law rules of conduct and published land-use regulations.

The Motion to Reconsider filed by the Citizens Landowners is denied. Mr. Roberts may draw a Decree consistent with this opinion. Pursuant to Va. Code Ann. § 8.01-267.8, the Decree may provide that it involves a controlling question of law that there is substantial ground for difference of opinion and that immediate appeal may advance the termination of the matter as to the question raised by the Interveners, should the parties be so inclined. The Court will enter a separate order consistent with this opinion, to which counsel may note their exception. I am, this date, entering the Decree previously submitted.

This order is final for purposes of an interlocutory appeal. However, the Decree shall not be stayed pending such appeal.